UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,

Plaintiff, Case No.:

vs.

JOSHUA CHRISTIAN ACADEMY, INC.,
JOSHUA CHRISTIAN FAITH CENTER, INC.,
and ROZALYN JACKSON, as legal
guardian of G.J., a minor,

Defendants.
_______________________________________/

**COMPLAINT FOR RESCISSION AND DECLARATORY JUDGMENT**

The Plaintiff, PHILADELPHIA INDEMNITY INSURANCE COMPANY ("PIIC or "Plaintiff"), by and through undersigned counsel, files this Complaint for Rescission and Declaratory Judgment against the Defendants, JOSUHA CHRISTIAN ACADEMY, INC. ("Joshua Christian"), JOSHUA CHRISTIAN FAITH CENTER, INC. ("JCFC"), and ROZALYN JACKSON ("Jackson"), as legal guardian of G.J., a minor ("G.J."), and states as follows:

**PRELIMINARY STATEMENT**

1. This is a declaratory judgment action brought pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201 for the purpose of determining an actual controversy between the parties with respect to an insurance policy issued by PIIC to JCFC., under which Joshua Christian Academy, Inc. is a named insured.

2. PIIC seeks a judgment declaring that it has no duty to defend or indemnify Joshua Christian with respect to a claim being asserted against Joshua Christian by G.J. in an underlying lawsuit styled *Rozalyn Jackson, as legal guardian of G.J., a minor v. Joshua Christian Academy, Inc.,* Case No. 16-2025-CA-6732, in the 4th Judicial Circuit in and for Duval County, Florida

(hereinafter "Underlying Lawsuit"). A true and correct copy of the Underlying Lawsuit is attached as **Exhibit 1.**

## JURISDICTION & VENUE

3. Plaintiff, PIIC, is a foreign corporation incorporated in the State of Pennsylvania with its principal place of business in Pennsylvania. It is, therefore, a citizen of Pennsylvania.

4. Defendant, Joshua Christian, is a Florida corporation with its principal place of business in Jacksonville, Florida. It is, therefore, a citizen of Florida.

5. Defendant, JCFC, is a Florida corporation with its principal place of business in Jacksonville, Florida. It is, therefore, a citizen of Florida.

6. Defendant, Rozalyn Jackson ("Jackson"), is domiciled in Florida and, therefore, a citizen of Florida.

7. Complete diversity of citizenship exists in this matter between the Plaintiff (Pennsylvania) and Defendants (Florida).

8. The amount in controversy exceeds $75,000.00, exclusive of costs, interest and attorneys' fees.

9. Accordingly, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332.

10. Venue is proper in the Middle District of Florida, Jacksonville Division, pursuant to 28 U.S.C. §1391(a), because the Underlying Lawsuit, for which PIIC seeks a judicial declaration of no duty to defend or indemnify, is pending in Duval County, Florida and the alleged incident giving rise to the insurance claim occurred in Duval County, Florida.

11. All conditions precedent to the initiation and maintenance of this action have been complied with, have occurred, or have been waived.

## GENERAL ALLEGATIONS

12. The Underlying Lawsuit centers around an alleged assault that occurred on November 4, 2024.

13. PIIC issued Commercial General Liability Insurance Policy No. PHPK2633652 to Josuha Christian Faith Center, Inc. ("the First Policy"), with an inception date of December 13, 2023. A true and correct copy of the First Policy is attached hereto as **Exhibit 2.**

14. The First Policy was subsequently canceled on February 12, 2024 for nonpayment of premium. *See* Notice of Cancellation attached hereto as **Exhibit 2.**

15. On December 12, 2024, JCFC submitted a new application to PIIC, on behalf of JCFC and Joshua Christian, to bind a new policy. The application denied any past losses or claims relating to sexual abuse or molestation allegations.

16. Additionally, JCFC and Joshua Christian signed a no known loss letter on December 12, 2024, certifying that they were "not aware of any losses, accidents, or circumstances that might give rise to a claim under the General Liability, Professional Liability and abuse lines from 12:01 am on 1/27/24 to the date signed below."

17. In reliance in the insured's statements and representations, PIIC thereafter issued Commercial General Liability Insurance Policy No. PHPK2702423-000 to Joshua Christian Faith Center, Inc. ("the Second Policy"). A true and correct copy of the Second Policy is attached hereto as **Exhibit 3.**

18. The Second Policy started on December 13, 2024.

19. On October 28, 2025, Jackson filed the Underlying Lawsuit against Joshua Christian.

20. The Underlying Lawsuit alleged that G.J. was a female student at Joshua Christian and was assaulted on November 4, 2024. (Underlying Lawsuit, ¶4, 7)

21. The Underlying Lawsuit alleged that G.J. "was determined by the Social Security Administration to be disabled due to a pre-existing brain injury and psychiatric disorders that affected her judgment, cognition, and susceptibility to manipulation such that she was extremely naïve and socially immature." (Underlying Lawsuit, ¶5)

22. The Underlying Lawsuit alleged that another student – John Doe – "proceeded to push G.J. into a closet and proceeded to have unprotected sex with G.J. a virgin, during school hours and on school grounds, despite G.J. repeatedly saying 'no.'" (Underlying Lawsuit, ¶11)

23. The Underlying Lawsuit described the incident as an "assault." (Underlying Lawsuit, ¶12)

24. The Underlying Lawsuit sought damages as a result of "the traumatic event." (Underlying Lawsuit, ¶18)

25. On April 13, 2026, Jackson filed a Motion for Leave to File First Amended Complaint ("Underlying Amended Complaint"). *See* **Exhibit 4.**

26. The proposed Amended Complaint includes the same allegations referenced in paragraphs 20 through 24 above, in addition to new allegations.

27. The proposed Amended Complaint asserts that "John Doe was arrested and charged with felony battery and committing lewd and lascivious acts." (Underlying Amended Complaint, ¶21)

28. The proposed Amended Complaint alleges that "after the November 4, 2024 incident, G.J. experienced substantial emotional and psychological injury and was diagnosed with adjustment disorder with mixed disturbance of emotions and conduct." (Underlying Amended Complaint, ¶22)

29. The proposed Amended Complaint alleges that "by December 2024, Defendant knew or should have known that G.J. was a vulnerable minor student who required appropriate,

careful, trauma-sensitive education and administrative handling." (Underlying Amended Complaint, ¶23)

30. The proposed Amended Complaint alleges that "from December 13, 2024 through the end of 2024-2025 school year, school personnel never offered or provided counseling or other services and repeatedly treated G.J. differently from other students by questioning her about male students, watching her interactions with male students, reporting those interactions to administration, and intervening when she spoke with or was near male students." (Underlying Amended Complaint, ¶24)

31. The proposed Amended Complaint alleges that "school personnel told G.J. that the school 'had their eyes on her', including watching her over surveillance film, and made her feel as though she was the one who did something wrong instead of a victim who experienced a traumatic event." (Underlying Amended Complaint, ¶25)

32. The proposed Amended Complaint alleges that "during that same period, school personnel corrected G.J. in front of others, called her out over contacts with male students, and handled her in a manner that embarrassed, stigmatized, and further upset her despite knowing of the November 4, 2025 incident and her resulting emotional vulnerability." (Underlying Amended Complaint, ¶26)

33. The Underlying Amended Complaint alleges that "Defendant's conduct cause G.J. additional emotional harm and reputational damage within the school community, including stigmatizing her as a sexually promiscuous student." (Underlying Amended Complaint, ¶27)

34. The Underlying Amended Complaint alleges that "as a direct result of trauma inflicted upon G.J. by Defendant's conduct, including its handling of the incident and its treatment of her afterward, Plaintiff, her grandmother and legal guardian, was forced to withdraw G.J. from

Defendant's school at the end of the 2024-2025 school year." (Underlying Amended Complaint, ¶28)

35. PIIC has agreed to defend Joshua Christian with respect to the claims being asserted by Jackson, under a reservation of rights.

36. PIIC asserts that it has no duty to defend or indemnify Joshua Christian with respect to the claims being asserted by Jackson.

37. Jackson has been named as a defendant in the present suit so that she will be bound by the Court's ultimate decree.

## THE APPLICABLE INSURANCE POLICY

38. As stated, the First Policy issued by PIIC was canceled on February 12, 2024 and was not in effect at the time of the alleged incident.

39. The Second Policy, which started on December 13, 2024, includes the following terms, conditions, endorsements and exclusions:

***COMMERCIAL GENERAL LIABILITY COVERAGE FORM***
***SECTION I – COVERAGES***
***COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY***

***1. Insuring Agreement***

***a.*** *We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:*

***(1)*** *The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and*

***(2)*** *Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.***

*No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.***

***b.*** *This insurance applies to "bodily injury" and "property damage" only if:*

***(1)*** *The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";*

***(2)*** *The "bodily injury" or "property damage" occurs during the policy period; and*

***(3)*** *Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** ---- Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.*

**a.** *"Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** ---- Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.*

**b.** *"Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** ---- Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:*

**(1)** *Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;*

**(2)** *Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or*

**(3)** *Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.*

*****

***RELIGIOUS ORGANIZATION PROFESSIONAL LIABILITY COVERAGE FORM***

***RELIGIOUS ORGANIZATION PROFESSIONAL LIABILITY***

***A. Insuring Agreement***

1. *We will pay those sums that the insured becomes legally obligated to pay as "damages" arising out of a "professional incident" in the curse of performing professional services…*
   *****
2. *This insurance applies to "damages" only if:*
   a. *The "damages result from a "professional incident" that takes place in the "coverage territory"; and*
   b. *The "professional incident" occurs during the policy period.*

   *****

***B. Exclusions***

*This insurance does not apply to "damages":*

1. *Expected or intended from the standpoint of the insured.*

*****

2. *Arising out of actual or alleged discrimination.*

*****

***SECTION V – DEFINITIONS***

*********

*R. "Professional incident" means any actual or alleged negligent:*

1. *Act;*
2. *Error; or*
3. *Omission*

*In the rendering of professional services to others, including any counseling services, in your capacity as a religious organization. Professional services include the furnishing of food, beverages, medication or appliances in connection therewith.*

*Any or all "professional incidents" arising from interrelated or series of acts, errors or omissions shall be deemed to be one "professional incident" taking place at the time of the earliest "professional incident."*

*****

***ABUSE OR MOLESTATION EXCLUSION***

*This endorsement modifies insurance provided under the following:*

***COMMERCIAL GENERAL LIABILITY COVERAGE PART***

*The following exclusion is added to Paragraph **2. Exclusions of SECTION I – COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY** and **Paragraph 2. Exclusions** of **SECTION I – COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**:*

*This insurance does not apply to any injury sustained by any person arising out of or resulting from the alleged, actual or threatened abuse or molestation by anyone.*

*We shall not have any duty to defend any "suit" against any insured seeking damages on account of any such injury.*

*This exclusion applies to all injury sustained by any person, including emotional distress, arising out of molestation or abuse whether alleged, actual or threatened including but not limited to molestation or abuse arising out of your negligence or other wrongdoing with respect to:*

1. *Hiring, placement, employment, training;*
2. *Investigation;*
3. *Supervision;*
4. *Reporting any molestation or abuse to the proper authorities, or failure to so report; or*
5. *Retention;*

*of a person for whom any insured is or ever was legally responsible or for whom any insured may have assumed the liability; and whose conduct would be excluded above.*

*****

***ABSOLUTE ABUSE OR MOLESTATION EXCLUSION PROFESSIONAL LIABILITY***

*This endorsement modifies and is subject to the insurance provided under the following:*

***COMMERCIAL GENERAL LIABILITY COVERAGE FORM***

*********

*The **Exclusions** section is amended to include provisions as follows:*

*The following exclusion applies to all professional liability coverages afforded in any coverage form or endorsement issued by us. When the applicable professional liability coverage:*

A. *Contains an abuse or molestation exclusion, it is deleted in its entirety and replaced with the following; or*

B. *Does not contain an abuse or molestation exclusion, the following is added:*

*This insurance does not apply to any loss, cost, expense, fine, penalty, act, error and omission, or damage alleging, arising out of or from, attributable to, or giving rise to any injury sustained by any person caused by the alleged, actual or threatened abuse or molestation by anyone.*

*We shall not have any duty to defend any "suit" against any insured on account of any such injury.*

*This exclusion applies to all injury sustained by any person, including emotional distress, arising out of molestation or abuse whether alleged, actual or threatened including but not limited to molestation or abuse arising out of your negligence or other wrongdoing with respect to:*

*1. a. Hiring, placement, employment, training:*
*b. Investigation;*
*c. Supervision.*
*d. Reporting any molestation or abuse to the proper authorities, or failure to so report; or*
*e. Retention*
*of a person for whom any insured is or ever was legally responsible or for whom any insured may have assumed the liability; and whose conduct would be excluded above; or*

*2. a. Failure to provide professional services to; or*
*b. Neglect of the therapeutic needs of,*
*any person because of the conduct which would be excluded above.*

*This endorsement is an absolute exclusion for abuse or molestation.*
*All other terms remain unchanged.*
*****

***ABUSIVE CONDUCT LIABILITY COVERAGE FORM***
***SECTION I – COVERAGE***
***A. ABUSIVE CONDUCT LIABILITY COVERAGE***
***1. Insuring Agreement***

***a.*** *We will pay those sums that the insured becomes legally obligated to pay as "damages" because of "bodily injury" to which this insurance applies caused by:*

***(1)*** *"Abusive conduct";*
*****

*Subject to the above provisions, we have the right and duty to defend any "suit" seeking "damages" to which this insurance applies. However, we have no duty to defend the insured against any "suit" seeking "damages" to which this insurance does not apply. We may at our discretion, investigate and settle any "claim" of "abusive conduct" and any "suit" that may result…*
*****

***b.*** *This insurance applies to "damages" because of "bodily injury" only if:*
***(1)*** *The "bodily injury" is caused by "abusive conduct" that takes place in the "coverage territory"; and*
***(2)*** *The "abusive conduct" first occurs during the policy period.*

*****

***2. Exclusions***

*This insurance does not apply to:*

*****

***k.*** *"Abusive conduct" that predates the inception of this policy notwithstanding that such "abusive conduct" may continue into this policy period;*

***l.*** *Any "claim" arising out of, based upon or attributable to:*

> *********
>
> ***(3)*** *Any "abusive conduct," fact, circumstance or situation of which, as of the inception of this policy, the insured had knowledge and from which the insured could reasonably expect a "claim" to arise; or*
>
> *********

***SECTION III – LIMITS OF INSURANCE***

*********

*Multiple incidents of "abusive conduct" which take place over multiple policy periods for which this coverage is provided shall be deemed to constitute one "abusive conduct" and shall be deemed to occur only at the time of such first incident. Coverage for such "abusive conduct" shall be provided only under the policy, if any, which is in place at the time of the first such incident and shall be subject to the applicable limit of insurance in that one policy.*

***SECTION V – ABUSIVE CONDUCT LIABILITY CONDITIONS***

*********

***F. Representations***

*By accepting this policy, the insured agrees:*

***1.*** *The statements in the Declarations, and in the application for insurance are accurate and complete;*

***2.*** *Those statements are based upon representations made by the insureds; and*

***3.*** *We have issued this policy in reliance upon those representations.*

*****

***SECTION VI – DEFINITIONS***

*********

*A. "Abusive conduct" means all actual, threatened or alleged acts of physical abuse, sexual molestation, sexual misconduct, sexual exploitation, or sexual injury arising out of a single act, or continuous or repeated exposure of one person or two or more people to multiple acts, of a sexual nature committed by:*

***1.*** *One person; or*

***2.*** *Two or more people acting together or in related acts or series of acts.*

*Any act or multiple, continuous, related or repeated acts of "abusive conduct" by one person or two or more people acting together will be deemed one "abusive conduct" and will be deemed to occur only when the first "abusive conduct" takes place, regardless of:*

*a. The number of people injured;*

*b. The time period, including multiple policy periods, over which the "abusive conduct" took place;*

*c. The number of such acts; or*

*d. Whether, in the case of two or more people acting together, each such person participated in each act.*

*****

**COUNT I**
**RESCISSION OF INSURANCE POLICY**

40. PIIC hereby re-alleges, restates, and incorporates by reference the allegations in paragraphs 1 through 39 above.

41. PIIC issued the Second Policy in reliance on the insured's statements and representations made in its application and no known loss letter.

42. JCFC made material misrepresentations in the insurance application when it denied any past losses or claims relating to sexual abuse and denied that any crimes had occurred or been attempted on the premises and by failing to disclose the alleged sexual assault incident that occurred on November 4, 2024.

43. JCFC made material misrepresentations in the no known loss letter when it certified that it was "not aware of any losses, accidents, or circumstances that might give rise to a claim under the General Liability, Professional Liability and abuse lines from 1/27/24 through 12/12/24" and by failing to disclose the alleged sexual assault incident that occurred on November 4, 2024.

44. Had JCFC disclosed the alleged incident that occurred on November 4, 2024, PIIC either would not have issued the Second Policy at all or it would have issued the policy on materially different terms.

45. As a result of the material misrepresentations in the application and no known loss letter, the Second Policy is unenforceable and *void ab initio*.

46. Upon rescission of the Second Policy, PIIC will return the premium that JCFC paid for the policy.

WHEREFORE, for the reasons stated above, the Plaintiff, PHILADELPHIA INDEMNITY INSURANCE COMPANY, requests that this Court enter an order rescinding the Second Policy and rendering the policy *void ab initio*, thereby ordering PIIC to return the premium to JCFC in accordance with rescission of the policy.

**COUNT II**
**IN THE ALTERNATIVE, DECLARATORY JUDGMENT OF NO DUTY TO DEFEND OR INDEMNIFY**

47. PIIC hereby re-alleges, restates, and incorporates by reference the allegations in paragraphs 1 through 39 above.

48. This count is brought in the alternative to the rescission count.

49. An actual, present and existing controversy has arisen between PIIC and Joshua Christian regarding PIIC's obligations, if any, with respect to the claims being asserted by Jackson in the Underlying Lawsuit.

50. PIIC seeks a judicial declaration of no duty to defend or indemnify Joshua Christian for the following reasons:

a. The First Policy does not apply because it was not in effect at the time of the alleged incident;

b. The Second Policy does not apply because the alleged "bodily injury" and "damages" occurred and were known by Joshua Christian before inception of the Second Policy;

c. The Professional Liability Coverage does not apply because the alleged "damages" did not arise from a "professional incident," no "professional incident" occurred during the Second Policy, and even if it did, such "professional incident" arose

from interrelated acts, errors or omissions, the first of which occurred before inception of the Second Policy;

c. The Abuse or Molestation Exclusions negate coverage under the Second Policy's Commercial General Liability and Professional Liability coverages.

d. The Abusive Conduct Liability Coverage in the Second Policy does not apply because the "abusive conduct" did not first occur during the Second Policy, the "abusive conduct" predated the Second Policy, and Joshua Christian had knowledge of the "abusive conduct" prior to the Second Policy.

e. Coverage is void under the Second Policy due to misrepresentations regarding the prior incident involving G.J, which had occurred and was known to Joshua Christian and JCFC.

51. There is a *bona fide*, actual, present need for the declaration of PIIC's rights and obligations under the Policy, if any.

52. This Court's declaration will confer certainty on the parties with respect to their rights, duties and obligations under the Policy and will, therefore, serve the interests of justice.

53. PIIC has no adequate remedy at law.

54. Defendant Jackson, the third-party claimant, is named herein so that she will be bound by the Court's ultimate decree.

WHEREFORE, for the reasons stated above, the Plaintiff, PHILADELPHIA INDEMNITY INSURANCE COMPANY, requests that this Court enter a Declaratory Judgment declaring the rights, status, obligations and duties of the parties under Commercial General Liability Insurance Policy Nos. PHPK2633652 and PHPK2702423-000 and including, but not limited to, the following:

A. That Policy Nos. PHPK2633652 and PHPK2702423-000 do not provide coverage for the claims being asserted in the Underlying Lawsuit such that PIIC has no duty to defend or indemnify Joshua Christian with respect to the claims being asserted against them by Jackson in the Underlying Lawsuit; and

B. That PIIC be awarded any such further relief in law or in equity to which it may be entitled.

Dated: October 2, 2026

TRAUB LIEBERMAN STRAUS
& SHREWSBERRY LLP

*/s/ Lauren S. Curtis, Esq.*
LAUREN S. CURTIS, Esq.
FBN: 150940
lcurtis@tlsslaw.com
SARAH A. WILKINS, Esq.
FBN: 124904
swilkins@tlsslaw.com
55 First Street South
St. Petersburg, Florida 33701
(727) 898-8100 (Tel)
(727) 895-4838 (Fax)
Counsel for Plaintiffs,
PHILADELPHIA INDEMNITY
INSURANCE COMPANY